# In the United States Court of Federal Claims
## OFFICE OF SPECIAL MASTERS
No. 20-1311V
UNPUBLISHED

| | |
|---|---|
| DAWSON LANGDON,<br><br>                Petitioner,<br>v.<br><br>SECRETARY OF HEALTH AND<br>HUMAN SERVICES,<br><br>                Respondent. | Chief Special Master Corcoran<br><br>Filed: April 7, 2023<br><br>Special Processing Unit (SPU);<br>Decision Awarding Damages; Pain<br>and Suffering; Influenza (Flu)<br>Vaccine; Shoulder Injury Related to<br>Vaccine Administration (SIRVA) |

*Ronald Craig Homer*, Conway, Homer, P.C., Boston, MA, for Petitioner.

*Nancy Tinch*, U.S. Department of Justice, Washington, DC, for Respondent.

### DECISION AWARDING DAMAGES[1]

On October 2, 2020, Dawson Langdon filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"), alleging that he suffered a Shoulder Injury Related to Vaccine Administration ("SIRVA") as a result of an influenza ("flu") and meningococcal vaccines administered to him on October 6, 2017. Petition, ECF No. 1. The case was assigned to the Special Processing Unit of the Office of Special Masters (the "SPU"). Although entitlement was conceded, the parties disputed the proper damages to be awarded.

For the reasons described below, and after holding a brief hearing, I find that Petitioner is entitled to damages in the total amount of **$102,722.42, representing an**

---

[1] Although I have not formally designated this Decision for publication, I am required to post it on the United States Court of Federal Claims' website in accordance with the E-Government Act of 2002, because it contains a reasoned explanation for my determination. 44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services). **This means the Decision will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

**award of $99,000.00 for Petitioner's actual pain and suffering, as well as $3,722.42 for Petitioner's unreimbursed expenses.**

## I.     Relevant Procedural History

As noted above, this case was initiated in October 2020. On January 18, 2022, Respondent filed a Rule 4(c) Report in which he conceded that Petitioner was entitled to compensation in this case. ECF No. 30. Accordingly, on January 24, 2022, I issued a ruling on entitlement in Petitioner's favor. ECF No. 31. After attempting to informally resolve the issue of damages, the parties informed me in August 2022 that they could not do so. ECF No. 46. I therefore provided the parties an opportunity to file written briefs, and later scheduled this matter for an expedited hearing and ruling. ECF Nos. 46, 56, Pre-Hearing Order (Non-PDF) filed March 1, 2023.

The hearing was held on March 24, 2023, and the only disputed damages component was pain and suffering.[3] Petitioner requests that I award him $120,000.00 for past pain and suffering. ECF Nos. 53, 61. Respondent proposes that I award the lesser amount of $92,500.00 for actual pain and suffering. ECF No. 57. The parties agreed to an award for unreimbursed expenses of $3,722.42. ECF No. 63.

## II.    Legal Standard

In another recent decision, I discussed at length the legal standard to be considered in determining damages, and prior SIRVA compensation within SPU. I fully adopt and hereby incorporate my prior discussion in Sections II and III of *Knasel v. Sec'y of Health & Hum. Servs.,* No. 20-1366V, 2023 WL 2547961, at *1-4 (Fed. Cl. Feb. 14, 2023).

In sum, compensation awarded pursuant to the Vaccine Act shall include "[f]or actual and projected pain and suffering and emotional distress from the vaccine-related injury, an award not to exceed $250,000." Section 15(a)(4). The petitioner bears the burden of proof with respect to each element of compensation requested. *Brewer v. Sec'y of Health & Hum. Servs.*, No. 93-0092V, 1996 WL 147722, at *22-23 (Fed. Cl. Spec. Mstr. Mar. 18, 1996). Factors to be considered when determining an award for pain and suffering include: 1) awareness of the injury; 2) severity of the injury; and 3) duration of the suffering.[4]

---

[3] A transcript of the March 24, 2023 Hearing in this case has not been filed as of the date of this Decision, but is incorporated by reference herein.

[4] *I.D. v. Sec'y of Health & Hum. Servs.*, No. 04-1593V, 2013 WL 2448125, at *9 (Fed. Cl. Spec. Mstr. May 14, 2013) (quoting *McAllister v. Sec'y of Health & Hum. Servs.,* No 91-1037V, 1993 WL 777030, at *3 (Fed. Cl. Spec. Mstr. Mar. 26, 1993), *vacated and remanded on other grounds*, 70 F.3d 1240 (Fed. Cir. 1995)).

### III.     Appropriate Compensation for Pain and Suffering

In this case, awareness of the injury is not disputed. The record reflects that at all times Petitioner was a competent adult with no impairments that would impact his awareness of his injury. Therefore, I analyze principally the severity and duration of Petitioner's injury. In determining appropriate compensation for pain and suffering, I have carefully reviewed and taken into account the complete record in this case, including, but not limited to: Petitioner's medical records, affidavits, filings, and all assertions made by the parties in written documents and at the expedited hearing held on March 24, 2023. I have also considered prior awards for pain and suffering in both SPU and non-SPU SIRVA cases, and relied upon my experience adjudicating these cases. However, my determination is ultimately based upon the specific circumstances of this case.

As the medical record establishes, Petitioner (then an 18-year-old college student) received flu and meningococcal vaccines in his left deltoid at the office of his primary care provider ("PCP"), James Britt, MD, on October 6, 2017. Ex. 1 at 2. He returned to his PCP relatively quickly, 28 days later, complaining of "constant" left shoulder pain "since receiving flu vaccine." Ex. 2 at 24. Petitioner was referred to an orthopedist, and examined only five days later, on November 8, 2017, by Douglas Martini, MD. He again complained of "[l]eft shoulder pain since [the] flu shot on 10-6-2017." Ex. 4 at 30. Dr. Martini observed that Petitioner's "dysfunction [wa]s fairly impressive." *Id*. at 31.

In the subsequent months, Petitioner underwent relatively continuous treatment for his shoulder injury through June 2018, including: six physical therapy sessions,[5] two therapeutic injections,[6] and two MRI scans.[7] On June 29, 2018, Petitioner sought a

---

[5] Petitioner engaged six physical therapy sessions between January 31, 2018 and April 10, 2018. Ex. 5 at 4-15.

[6] Petitioner received two contemporaneous therapeutic injections on December 6, 2017, one injection was a combination of Celestone and Marcaine, and the other only Marcaine. Ex. 4 at 29.

[7] Petitioner's first MRI scan occurred on December 2, 2017. The MRI Impression indicated: "Normal supraspinatus and infraspinatus tendons without tear." Ex. 6 at 4.

Petitioner's second MRI scan occurred on May 5, 2018.That MRI Impression indicated:

> 1. Hill-Sachs deformity of the humeral head, as described. Moderate contusion. The findings may be due to previous anterior dislocation, though there is no corroborating history or additional physical signs to suggest this diagnosis. Has the patient had direct trauma to this region?
> 2. Mild insertional tendinitis of the infraspinatus tendon, perhaps reactive.
> 3. Trace fluid in the subacromial/subdeltoid bursa.

Ex. 4 at 37. An addendum to the second MRI, compared it to the first, and observed

3

second opinion from orthopedist, Raymond Carroll, MD. Ex. 4 at 22-23. Dr. Carroll observed that Petitioner had experienced "continued left shoulder pain after receiving an injection in October," and that it was "curious as to why he has developed pain after his injection," noting that Petitioner "may have developed adhesions after the injection." Ex. 4 at 23. Dr. Carroll recommended Petitioner undergo shoulder surgery, specifically "a left shoulder arthroscopy with debridement to evaluate the structures in the shoulder and to perform an adhesiolysis and decompression." *Id.* Dr. Carroll noted in his record that he discussed his surgical and rehabilitation recommendation with Petitioner, and was "happy to schedule at . . . [Petitioner's] convenience." *Id.*

Subsequently, Petitioner did not seek treatment for his shoulder injury for a little over two years. During this treatment gap, Petitioner was involved in two motor vehicle accidents. First, a January 2019 accident caused Petitioner to suffer a leg injury, resulting in a hematoma on his left leg, however his left shoulder was not impacted by this accident. Ex. 2 at 15. Thereafter, in May 2019 Petitioner was involved in a second motor vehicle accident and was seen in the emergency room the next day. Petitioner reported pain in his back, neck, and left anterior shoulder. Ex. 2 at 104. Petitioner was found to have a left shoulder contusion, in addition to other injuries, however, his left shoulder x-rays were normal. *Id.* at 105-106. Although, Petitioner's subsequent treatment focused on his back, he exhibited full left shoulder strength, 5/5, and both Neer's and Hawkins Sign tests of his left shoulder were negative. Ex. 2 at 87-89 (July 24, 2019 orthopedic evaluation).

On August 12, 2020, over two years after his last medical visit specific to his left shoulder post-vaccination pain, Petitioner returned to Dr. Martini for a follow-up appointment. Ex. 2 at 83. Dr. Martini's history indicates that Petitioner's "[s]houlder pain was directly related to a vaccination that he received back in October of 2[0]17. We have exhausted all reasonable conservative measures to reduce his pain and discomfort. He has some symptom[s] every day and does have nighttime discomfort." *Id.* Petitioner wished to discuss treatment options to obtain relief from his shoulder symptoms, since he was "not getting any better." *Id.* Dr. Martini stated he believed that "there was increased fibrosis associated with this vaccination" and recommend proceeding with shoulder surgery as all conservative measures had been exhausted. *Id.* at 84.

---

> Leading consideration includes repetitive overhead biomechanical etiology with internal impingement. Alliteratively, this can be seen with a direct impact injury, although there is no history of such other than a reported deep flu vaccination in this region in October 2017. Regarding concern for possible infection, this would be a very atypical appearance for indolent or low-grade infection; however, correlation with laboratory studies including inflammatory markers could be performed.

*Id.* at 39.

4

Over three years and three months subsequent to his vaccination, Petitioner's treatment culminated in a shoulder surgery performed by Dr. Martini. On January 18, 2021, Petitioner underwent the following three procedures: "1. Left shoulder arthroscopy and extensive debridement with intraarticular biceps tenotomy. 2. Subacromial decompression with anterolateral acromioplasty. 3. Mini-open biceps tenodesis." Ex. 10 at 4. Petitioner's post operative diagnosis included: pain in left shoulder and biceps instability. *Id.* Dr. Martini, noted, among other findings in his operative report, that "there was disproporti[onate] amount of synovitis and scar tissue formation" given Petitioner's age in the subacromial space. *Id.* at 5.

However, Petitioner made a very good recovery post-surgery. He underwent 25 post-operative physical therapy sessions between February and July 2021. Ex. 14 at 2, 12. On May 12, 2021, four months after his shoulder surgery, Petitioner was evaluated by physician's assistant, Kevin G. Morrison. He was found to have full left shoulder range of motion and full shoulder strength and reported no left shoulder pain or limitations. Ex. 17 at 8-9. Petitioner was cleared to return to work as a volunteer firefighter and discontinue physical therapy.[8] *Id*. at 9.  On July 13, 2021, Petitioner completed his post-operative physical therapy, and has sought no further treatment of his left shoulder injury. Ex. 14 at 2.

In making my determination, I have fully considered Petitioner's sworn statements describing the pain and limitations he experienced following his vaccination.[9] Ex. 13; Ex. 19. Petitioner explains he chose not to pursue shoulder surgery following Dr. Carroll's June 2018 recommendation because he needed to spend the summer working, following his first year of college, to afford the upcoming semester (and surgery would have prevented him from working). Ex. 19 at 1. Petitioner also indicates he was concerned about the cost of surgery. *Id.*

Petitioner further states that he continued to experience what he "would describe as lifestyle altering pain," but he did not discuss his left shoulder with his providers because he knew the cause of the pain and "that the next step was surgery, which I was still hesitant to pursue." Ex. 19 at 1-2. He discussed that his shoulder pain during this time prevented him for engaging in softball, limited his ability to exercise, and to fully perform his duties on the farm where he worked hindering his ability to receive a promotion. *Id.* at 2. Petitioner asserts that his May 2019 vehicle accident did not affect his left shoulder

---

[8] The prior month Petitioner was determined to be not yet ready to return to work as a volunteer firefighter by Mr. Morrison. Ex. 17 at 11.

[9] Although I note that I do not find any unique personal factors that would independently support a larger award (such as a pregnancy at the time of injury). *See Desrosiers v. Sec'y of Health & Hum. Servs.*, No. 16-0224V, 2017 WL 5507804, (Fed. Cl. Sept. 19, 2017).

pain which he continued to experience. *Id.* Finally, Petitioner explains that he returned to see Dr. Martini in August 2020 because "I no longer wanted to accept the changes to my lifestyle and body that my SIRVA continued to cause" and did not want to remain in pain indefinity. *Id.* at 3.

Overall, the record establishes that Petitioner suffered a relatively moderate injury for approximately three years and nine months, but later culminating in surgical intervention. While the large gap in Petitioner's treatment (just over two years and one month) does not prevent a pain and suffering award, it nevertheless merits consideration, and factors into my pain and suffering calculation. While Petitioner reported significant pain when he sought treatment, the fact that he was able to withstand his shoulder pain for over two years with no treatment suggests a lesser severity than in other cases. I accept Petitioner's representation that he needed to work during the summer of 2018, and therefore did not proceed with surgery, but also find that had his pain been extreme he would have sought further treatment prior to August 2020. Additionally, while Petitioner's May 2019 motor vehicle accident did not impact his left shoulder, other than a contusion, his subsequent treatment for his back injury demonstrated that he had full left shoulder strength, and his left shoulder Neer and Hawkins tests were negative for shoulder dysfunction. Additionally, Petitioner did not take the opportunity in July 2019 when receiving orthopedic care for the injuries related to his motor vehicle accident to discuss his ongoing left shoulder pain.

Regarding cases that could provide guidance, I find that *Hayes v. Sec'y of Health & Human Servs.*, 17-804V, 2021 WL 688628 (Fed. Cl. Spec. Mstr. Jan. 6, 2021) (awarding $120,000.00 for past pain and suffering), is a good comparable - but with one significant distinction warranting a lower award in this case.[10] This case and *Hayes* both involve shoulder injuries of a long duration suffered by college students, with approximately the same amount of physical therapy, plus treatment gaps. However, the *Hayes* petitioner went to college away from home and preferred to seek treatment at home. Whereas Mr. Langdon went to college in his hometown. Additionally, although the *Hayes* petitioner had multiple gaps in her treatment and Petitioner only one large gap, Petitioner went a much longer period of time with no shoulder treatment at all as compared to the *Hayes* petitioner.

---

[10] I find that the cases offered by Respondent, *Shelton v. Sec'y of Health & Human Servs.*, No. 19-279V, 2021 WL 2550093 (Fed. Cl. Spec. Mstr. May 21, 2021)( (awarding $97,500.00 for past pain and suffering and involving a large gap in treatment following onset) and *Hunt v. Sec'y of Health & Human Servs.*, No. 19-1003V, 2022 WL 2826662 (Fed. Cl. Spec. Mstr. Jun. 16, 2022) (awarding $95,000.00 for past pain and suffering), involve factors suggesting somewhat less severe injuries than that suffered by Petitioner on balance.

Accordingly, **I find that $99,000.00 represents a fair and appropriate amount of compensation for Petitioner's past or actual pain and suffering.** The sum is somewhat closer to what Respondent has proposed – justifiable where, as here, a SIRVA case involving surgery *also* features an inordinately-long treatment gap underscoring the overall mildness of the injury.

## Conclusion

**I award Petitioner a lump sum payment of $102,722.42, representing $99,000.00 for Petitioner's actual pain and suffering, plus the agreed-upon sum of $3,722.42 for Petitioner's unreimbursed expenses, in the form of a check payable to Petitioner.** This amount represents compensation for all damages that would be available under Section 15(a) of the Vaccine Act. *Id*.

This amount represents compensation for all damages that would be available under Section 15(a). The Clerk of the Court is directed to enter judgment in accordance with this Decision.[11]

**IT IS SO ORDERED.**

<u>s/Brian H. Corcoran</u>
Brian H. Corcoran
Chief Special Master

---

[11] Pursuant to Vaccine Rule 11(a), entry of judgment can be expedited by the parties' joint filing of notice renouncing the right to seek review.